The evidence in this case can be boiled down into two categories. The first I would describe as Mr. Roetcisoender's mere use of a computer. There's no dispute that he obviously was on the computer when this crime was being committed. But his mere use of the computer is not sufficient to show he knew that by accessing these peer-to-peer networks that he would be allowing other individuals to access his computer and thereby qualify for the conviction of distributing trial pornography. Well, he did indicate – I mean the evidence does indicate that he had quite a bit of sophistication, did he not, in knowing how to move files around and that sort of thing? With all due respect, Your Honor, I don't think it showed that he had sophistication. I think it showed he had experience. Mr. Roetcisoender, at the time of this case, was a 72-year-old man who graduated college in 1966. He had been viewing pornography since the 60s, child pornography since the 60s. I'm sorry, I couldn't hear you. And had been viewing child pornography since the 60s. That's correct, Your Honor, but I think the record shows that he was viewing it in formats other than, obviously, the Internet because it didn't exist back then. But after his graduation from college in 1966, he spent 30 years as a ranch hand. My point being, Judge, that he did not have any training in the technical aspects of using a computer. There's no dispute that, as I said, he was downloading this stuff. The question, I think, for the court is did he know that when he downloaded this peer-to-peer file sharing program called eMule that it was set to a default position where other people could access his computer? What did he mean when he told the officer, it stays in eMule unless I take it out? I think that's an excellent question, Your Honor, and I don't think that question is answered by the evidence. We don't know what he meant by that. Can the jury make an inference as to what he meant? I would argue that they can't, Judge, because it's a nonsensical comment. When you download a file, it doesn't stay in an option. I think that language that he used clearly indicated that he did not have a technical background. What about the fact that he transferred thousands, tens of thousands of files to an external drive and named them with very specific lengthy titles? And the ones that he left in the eMule option or in the eMule, he had with very, very succinct descriptions that would be easily searchable. I argue, Judge, that his moving of files around is, again, falling under the category of just using the computer. It doesn't show that he understood that this program has been used. Can the jury infer that when he named something, Young noticed on the accessible files and then has names on the external hard drive files that are a sentence long, typically, that there's a difference in what he named and what he left on the eMule versus what he named and put on the external hard drive? Obviously, Judge, the jury could infer whatever it wants. And in a case like this where there are— Is that a reasonable inference? I would say it's not because this comment about the question he was asked is, what happens when you download something from eMule? And his response was it stays in eMule option unless you take it out of there. Again, I would argue that shows he doesn't understand. That's not language that any of us would use to describe what happens with a file that we download or move. The program was set to allow others to access his computer. I would also argue that Mr. Roetsesender submitted to two lengthy interrogations by the officers in this case and was never asked, do you understand that by leaving files in this particular location that other people can access them? If that question had been asked in either of these two, I think they were hours-long interrogations, we wouldn't be here on this issue today. But the point is the comment that it stays in an eMule option with all due respect to the government, I don't think that's strong evidence that he knew. I think that's actually strong evidence that he doesn't know because that's not language that anybody who has a technical background would use. A file doesn't stay in an option. Files stay in folders. Files stay in different portions of a hard drive. But they don't stay in an option. I think this case is different than the Richardson case from this circuit and the Shear Radio case and Schaefer case from the First and Tenth Circuit because those cases there was evidence that the defendant knew I'm leaving this stuff available so that someone else can just sort of walk in and take it. There's just no evidence in this record that Mr. Roetsesender, given his age and experience and circumstances, knew that that was possible. How many child pornography videos did he download? Well, I think it was the videos, I don't remember, but the total was in hundreds of thousands, I believe, Your Honor. But again, downloading is different than knowing what happens when the program is on your computer. I guess I would compare it to I can drive a car pretty well. I'm not a good mechanic. In other words, I can manipulate the machinery, but I couldn't get in there and tear apart a fuel injection system and understand what I'm doing. Even though the program itself files sharing program, it seems to me people would buy it for that purpose. Yeah, I wondered about that myself. But I think, again, given the state of the evidence in this case, we're just sort of guessing that that's what Mr. Roetsesender understood, that when he put this file on his computer that someone else could reach in and take something out. And again, I think it would have been a fairly easy question to pose to him during the course of those two interrogations. But it wasn't done, and that's just the state of the record that we have before us. I also think it's important to note in this case we don't have any evidence of him chatting with other users or purveyors or viewers of these types of materials. Apparently he didn't need to. I'm sorry? Apparently he didn't need to. That may be true, but again, I think we're left to guess. But my point is in other cases I've seen people are chatting, oh, I have this, why don't you check it out, or what do you have in this regard? We don't have any evidence of him communicating with other users. That would have been strong information or strong evidence that he understood, that by downloading this program and just leaving it set to the default position. Is there any file that he left that he himself named, that he left in the e-mail folder, that had a name comparable to the files, the long-named files that he took off and put on his external hard drive? Are there any? A single one? Ten? Five? How many? I would have to check, Your Honor. There were a lot of files involved in this case, and I just don't know offhand. I can certainly submit something to the court and the government after today's argument, but I honestly don't know at this point. If everything or virtually everything left on e-mail that he named himself had titles such as young nudists and everything else that he put in his external drive had names that I'm not going to repeat, wouldn't the jury be able to infer that he's leaving easily searchable names in the e-mail file that he named versus what he stored away for his own personal use on his external drive? I think that gets us closer to sustaining the conviction, but I don't think that's sufficient in and of itself. The mere naming of a file in a particular topic. Well, it would show knowledge that it would tend to show knowledge that he knew others were able to search. I would respectfully disagree. I think it could possibly show that, but it could more likely with his level of experience just indicate that that's what he wanted to be able to access his downloads. Well, that's not what he used on his external drive. My point is that's not how he named his external hard drive files that were clearly for his own personal use. They had very different names. I believe some did, and I suspect some did not. That's what I would like to know. What's the difference? I would have to go back and check, Your Honor. I'm sorry. I just don't remember the thousands of files. Again, I would argue that the evidence presented by the government in this case simply qualifies as mere usage, sort of maybe the equivalent of in a conspiracy case where there's mere presence. It doesn't show participation in the conspiracy. Here we have mere usage. I don't think that shows knowledge and intent. And then this nonsensical statement he made taken in conjunction with his facts and circumstances of his background, I don't think they rise to the level of evidence that can sustain the conviction. If there are no further questions, I'll wait for the rest of my time. Yes, you've saved time for rebuttal. Thank you, Mr. Adler. Ms. Ellickson? May it please the Court, Jenny Ellickson for the United States. Sufficient evidence supported the jury's conclusion that the defendant acted knowingly when he distributed child pornography in his shared e-mail folder. First, the defendant's statement about how files stay in the e-mail option unless you take them out of there is reasonably interpreted as meaning that he understood that files in that folder would remain accessible to others on e-mail. The jury could draw that inference, and this Court must assume that they did. Second, the defendant was a very experienced user of, a very experienced downloader of child pornography and had amassed a collection of more than 100,000 images of child pornography, and he also had extensive experience with e-mail. He admitted using it for at least nine months, and I think the jury could conclude that he had used it for much longer than that. These two pieces of information, again, allow the jury to conclude that the defendant knew how this program Well, I might use a Microsoft file for 10 years and not know whether it's accessible by others. Yes, Your Honor, and if that were the only evidence in this case, this might be a closer question. But because of the defendant's statement about e-mail option and also his decision to create a folder in his e-mail shared folder titled Young Nudists. What was the difference? I mean, was it all like that where the searchable files had easier names than the very different files that were on the external drive, or was it a mixed bag? Well, Your Honor, the record is a little unclear on this because all of the names of the files in the defendant's computer, there were so many of them that they didn't make it into the record. I think the record shows that there were two files in the Young Nudists folder that had the long names that the court was asking about in the opening argument. But the fact that the defendant titled the folder Young Nudists What did he title his folders on the external hard drives or the hard drives that were not available on e-mail? Well, the folders were titled things like New Folder or 28, things that someone who was just going through the computer who was not the defendant wouldn't understand what those folders contained. And so the fact that the defendant used those opaque titles on his other folders but titled the folder in the shared folder Young Nudists. Was that the only folder in the shared folder that he named? That was, according to the record, that was the only folder in the shared folder. That was the only user-created folder. And we know from the evidence, and the jury can conclude from the evidence, that the defendant did not need to use the name Young Nudists for his own purposes because he gave these opaque folder names to his other folders on the same computer. And so the jury could conclude that that title was chosen for the benefit of others to help them more readily locate his child pornography collection. So given all of the evidence, the jury could reasonably conclude that the defendant knew what he was doing when he decided to keep these files in his shared folder where others could and did access them. I'm happy to answer any other questions the court may have, either about that issue or about the guidelines issue that the defendant has raised. Thank you, Ms. Ellison. Thank you very much. Mr. Adler, you save time for rebuttal. Very briefly. Again, this comment that he made about the files staying in the e-mule option doesn't show, it doesn't shed any light whatsoever on his knowledge with regard to access of those files. Where it stays and who can access it are two separate issues. And then finally, I would also argue that the mere titling of files also doesn't show that he has knowledge of who can access and under what circumstances this e-mule program allows others to enter into his computer. There are no other questions at all. All right. Thank you, Mr. Adler. Your case is under submission, and we noticed that your court appointed, and you always do a good job for your clients in our court. We appreciate your willingness to take these appointments.